We'll hear argument today in Case 16-32, Kindred Nursing Centers v. Clark. Mr. Pincus? Thank you, Mr. Chief Justice, and may it please the Court. To determine whether a power of attorney confers authority to enter into an arbitration agreement, Kentucky applies a rule different and more demanding than the rule for determining whether a power of attorney confers authority to enter into contracts generally. The question in this case is whether the Federal Arbitration Act precludes Kentucky from erecting the special obstacle to enforcing arbitration agreements signed by an attorney-in-fact. To ask that question, we believe, is to answer it. That's the very reason that Congress enacted the FAA, to prevent discriminatory rules targeting arbitration agreements. Suppose Kentucky had a statute providing that an attorney-in-fact lacks authority to do a number of things, convey real property, move the principal's residence out of State, invest in foreign real estate, a few more examples like that, or sign an arbitration contract. That's not this statute, I know. But at some point, can arbitration clauses be included in a list of items that must be given special attention? At some point, they can, Your Honor. And I think the dividing line, the statute, of course, refers to rules that apply to any contract. This Court has talked about contracts generally. We don't think that means that the rule has to apply to every single contract, no matter what. But if the rule takes its meaning from a characteristic other than arbitration, to give an example, if a State had a law that said all consumer contracts have to be in at least 10-point type, surely the State could apply that law to an arbitration agreement associated with a consumer contract. The problem obviously arises if there's some gerrymandering that puts arbitration in a special category. And we think the rule here fails for several reasons, one of which is even the categories that the State court said it was erecting really don't hold up based on the objective evidence. But also, more importantly, the reason that arbitration was included in this category is the very reason that the FAA forbids, which is the conclusion by the State that arbitration is onerous and therefore should be classed with other especially onerous contracts. That's exactly what the FAA was designed to prevent. So that's the problem here. Sotomayor, So how about a different example, but more related in my mind right now? Under Kentucky law, let's say, the power of attorney requirements are strictly construed. That was one of the principles that the Court below used to interpret at least one of the contracts. And as a general matter, it states that the State requires express consent to confer power to waive any fundamental constitutional right. Would this general principle be preempted by the FAA? By the FAA? Well, let me distinguish between those two general principles, Your Honor, if I may. I think a principle of strict construction, fairly applied across a wide category of contracts, probably is something. In other words, if it applied to all powers of attorney, probably is something that would pass muster under the FAA. Again, recognizing that a court would have to take care that notwithstanding the general rule, there wasn't some discrimination, in fact, against arbitration. I think the question about a fundamental rights line, let me answer that in two ways. First of all, in this case, we don't believe that that's, in fact, what happened because we think there are a number of fundamental rights that are not categorized in the group that the State court mentioned. And, in fact, what the State court did was identify four or five especially onerous examples of intrusion on fundamental rights and say these are all like arbitration. It didn't say all fundamental rights. For example, forum selection clauses may waive due process rights. There's no indication that they're covered, the right to property, et cetera, et cetera. I think, so that's not this case. If there were a fundamental rights rule, I think the problem that it presents is whether that intrudes on the judgment that the FAA made, that arbitration contracts are not especially onerous as other waivers of fundamental rights may be. And, therefore, I think that case would, it's obviously different than this one. The court doesn't have to reach it, but we think even in that case grouping an arbitration contract with a contract to enter into a guilty plea or something like that I think is troublesome because it really puts arbitration agreements in the very category that Congress said they shouldn't be in. What about if the category were fundamental rights that implicate the individual's life or health, so that you would have to have an express provision giving the attorney in fact authorization to consent to various procedures that a terminally ill person might undergo, and if this were put in that category? Well, I just want to make sure I understand your hypothetical, Your Honor. Well, this case, what's involved here is care for a person who is unable to look after that person's own care, an elderly person, a disabled person in a nursing facility. So what if that were lumped together with consent to surgery, consent to terminate feeding or breathing for a terminally ill patient? And all of those could be put into a category that implicate life or health. It could. I don't think an arbitration agreement would fall into that same category of implicating life and health. And also I think it's important to recognize that, again, here the State court didn't say that all decisions implicating life or health are subject to its special express requirement. It identified a couple, an abortion or adoption. Well, Justice Alito's example, just to take it a little further, suppose the nursing home said you cannot enter here unless you sign the arbitration agreement, and this is the only place where this person can go for care. That brings it closer to some of Justice Alito's examples, because now there's a danger that the care can't be rendered. Well, interestingly, what the Kentucky court held in another case being that actually the power to make health decisions would be interpreted to include the power to enter into an arbitration agreement if arbitration were a condition of admission. But in this case, because it wasn't the condition of admission, it didn't apply that rationale. I think, I guess the distinction here seems to me the decisions about health that we're talking about, operations, medicine, are a category of important decisions that the State has the power to decide about. The problem with the hypotheticals is that the FAA basically says the State doesn't have the power to treat arbitration agreements specially on the theory that they belong to parties to the arbitration agreement. And so I think a decision by the State to lump them together with those other decisions runs afoul of the FAA. Again, not this case. But the context here seems different from the arbitration cases that we've had in recent years. This doesn't involve an arbitration about the amount that you were charged for your cable bill or for your telephone bill. This involves a situation where an elderly person needs care. And as Justice Kennedy's hypothetical mentioned, it may be that the only facility that's available or all of the facilities require the signing of an arbitration agreement which prevents the assertion of tort claims, and the elimination of the deterrence that they provide may really implicate the care of someone who is vulnerable. So this seems like something that is close to, that it falls squarely within the police power of the State. Now, I suppose that there's a connection here to interstate commerce. I don't know what exactly it is, but on the assumption that everything is connected to interstate commerce, I assume that this falls within the FAA. But you see the problem. This is really taking the arbitration precedents that we have handed down in recent years into a different category of interests. Well, respectfully, I don't think so, Your Honor. The Court unanimously decided the Marmette case a few years ago, which involved this precise context, an arbitration agreement in the nursing home context. And there, one of the arguments that was advanced in opposing, in supporting the rationale that the arbitration clause shouldn't be enforced was that tort claims and the nursing home context is different. And the Court expressly rejected that criteria. And I think Congress's judgment in the FAA, and Congress has specifically looked at the nursing home context in recent years, there have been a number of hearings and examinations, is that there isn't a difference between deciding claims in arbitration or in court. And the amicus briefs filed in the case, I think, recite some of the empirical data that, in fact, in the nursing home context and in other contexts, arbitration results for claimants are quite similar. The differences are it's cheaper, the process is cheaper and faster. Ginsburg What do you do with the argument that this doesn't have to do with the enforcement of an arbitration agreement? It goes to the question of whether the agreement was ever formed or made. That is, if it takes outside the power of attorney, the power to enter into arbitration agreements, so it's a question that goes to making that enforcement. Well, two answers, Your Honor. I think it does go to enforcement, because really the question here is what the Kentucky Court said, we are interpreting the power of attorney document in a way that renders the arbitration agreement unenforceable. I don't think anyone argues that any of the other requisites of contract formation were not present. But also, this Court has never drawn a distinction between contract formation and enforceability in applying the FAA. And I think to do so would open a dramatic hole in the FAA, because it would be quite easy for a state to say, for example, an arbitration agreement requires notarization, no other contract does, or an arbitration agreement to be properly formed must contain a provision that allows it to be revocable at will. And so it would be quite easy to, if formation was ruled off limits, to allow very easy circumvention of the protections of the FAA. Well, what about the Wellner documents? As I read what the Court said in the first part of its discussion about that, it just interpreted the power of attorney as not reaching arbitration. So there it was just exercising its ordinary powers of contract interpretation. I think Wellner is closer to the issue that the Court confronted in Imburgia, whether that really was an ordinary contract interpretation. And as we've explained, the argument for enforcing it is that it expressly provides the authority to contract with respect to personal property, and it's been long settled under Kentucky law that choses an action, causes of action, or personal property. The Court didn't apply that precedent, and that seems to us to be exactly, as in Imburgia, a situation where a generally applicable rule was not applied in the arbitration context. Alito What do you think? Every time a State court incorrectly interprets a power of attorney relating to, as it relates to arbitration, that that raises an FAA preemption issue? I think the question is whether the State court's decision fails to put an arbitration agreement on an equal footing, as the Court has said. Obviously, there's not going to be the occasion or the ability for the Court to review all of those decisions. I think in this case, there's obviously a difference between the Clark situation, where there was no argument that the power of attorney was ambiguous. In fact, the State court said it wasn't. That's just applying a new legal rule. In the Clark situation, there is this question about whether or not it was ambiguous, but we think under any reasonable test, it really can't be said to be ambiguous given the longstanding rule under Kentucky law and the fact that the power of attorney there in a separate provision conveyed the authority to bring and settle lawsuits. Sotomayor Following up on Justice Alito's question, and I know Ping is not before us, but applying your arguments to Ping, because the author of Ping dissented in these two cases, do you think Ping is closer to the neutral application of a contract interpretation? Pincus I do, because what the Court relied on in Ping was the absence of any general authority to contract, and the fact that the broader – what King provided for was the ability to invest funds, the ability to make health decisions, and the ability to essentially administer real property. It didn't have a general clause relating to the making of contracts or the making of contracts with respect to personal property. There was some – I'm sorry, Your Honor. Sotomayor No, no. I was going to say Wilner is a little closer, but it seems to me that – Pincus The difference in Wilner is that Wilner does have a very broad clause that provides for the making of contracts with respect to personal property, and given the fact that under Kentucky law personal property includes choses as causes of action, choses in action, it's pretty clear. And also in Wilner and not in Ping was a separate provision that gave the attorney the power to bring and prosecute lawsuits. So if the fear was that that general power to contract with respect to personal property somehow didn't extend to litigation, there's a separate clause with respect to litigation. Now, the Kentucky court said that clause alone isn't enough because it doesn't relate to arbitration or to contracting, but it seems to me the combination of them is pretty powerful in explaining what's going on. Sotomayor That's a pretty powerful – that's a pretty weak argument that they've made a special rule for arbitration. They looked at the institute settle and conduct litigation with no mention of alternative dispute resolution and conveying personal property, not necessarily contracting. There wasn't a general contracting clause. So I think there's arguments on both sides of that question. If there is, what do you suggest we do? Well, let me take a little bit of issue with your – with the predicate of your question, because the Wilner power does say to make, execute, deliver deeds, releases, conveyances, and contracts of every nature in relation to both real and personal property, so I think that is a pretty broad provision that was not present in Ping. Ginsburg May I ask you a question about the wrongful death action, which everyone agrees does not belong to the patient, it belongs to the survivors. And the same issues of negligence on the nursing home part would arise in the patient suit as in the survivor suit. Who determines which one goes first? Because if the survivor's action goes first and the nursing home is found liable, wouldn't the nursing home be bound by that in the arbitration? I guess that in the first instance would be a question of Kentucky law, Your Honor. I'm not sure how Kentucky law in arbitration treats prior decisions, and I also, since there are different parties, I don't know whether Kentucky law provides for offensive non-mutual estoppel. So I guess those would be the questions that would arise in that context. Of course, the Court has said most recently in the KPMG case that the fact that there are claims that could be bundled together doesn't mean that the ones that are subject to an arbitration clause shouldn't be sent to arbitration. So just to sort of return to first principles and to elaborate on my answer to Justice Sotomayor's question, there are two distinct issues in this case. One is the general express reference rule that the Court announced and applied with respect to Wellner in particular. That rule obviously also applies to the Clark power of attorney. I mean, applied in Clark with respect to the Wellner power of attorney, there's the second question about whether the language that I quoted is sufficiently clear that a decision by the State court that it is ambiguous triggers the same kind of concern that the Court identified in Imburgia as indicating that this is really a special rule targeting arbitration as opposed to the application of a neutral principle. Unless the Court has any further questions, I'll save the remainder of my time for rebuttal. Thank you. Roberts. Thank you, counsel. Mr. Salyer. Thank you, Mr. Chief Justice, and may it please the Court. Kentucky is a common law state in the development of its power of attorney interpretive law. It is not a uniform power of attorney act state. Therefore, over time, the Kentucky Supreme Court and the lower courts of Kentucky develop Kentucky's interpretive rules regarding powers of attorney case by case, again, over time. And this is the rule that the Kentucky Supreme Court has established in this case below. The power to waive generally fundamental constitutional rights must be unambiguously expressed in the text of a power of attorney. Is there such an explicit reference in the power of attorney with respect to anything other than arbitration agreements? Is there anything? Is there an explicit reference? To be effective, you just told us, the power of attorney has to explicitly state the disputes will be settled by arbitration. My question is whether there is any other contract that in order to be made effectively in Kentucky, there must be an explicit reference in the power of attorney. Oh, I understand your question, Justice Ginsburg. From this is the announcing of this particular rule. But logically, from here on out, any such actions taken by an attorney, in fact, that might restrict the principal's free speech rights, say, by entering into a contract with a nondisparagement clause or some sort of confidentiality clause, that would necessarily have to be spelled out in a power of attorney. In other words, for a number of years, Kentucky has allowed powers of attorney. And the first time that one was called into question under this theory was with reference to the arbitration. Well, Your Honor, here's the thing about Kentucky powers of attorney. It has been the law of Kentucky since 1912 that powers of attorney are to be strictly interpreted and that the third party deals with the principal via an agent at that third party's own peril. Therefore, it is up to and incumbent upon that third party to be very clear and understand what the agent is allowed to do. And the fact is that it is the reason that these cases have not come up is that the third parties, the banks, the whatever, are receiving powers of attorney as authority of agents for principals. They have always demanded very explicit information in that power of attorney. This happens to be an instance where you have this third party who doesn't actually want more explicit language in the power of attorney. Have I answered your question? Breyer. So in Kentucky, I issue a power of attorney to Jones and say you have full power to protect, defend, and maximize the value of all my property. Okay? That's what it says. Yes, Your Honor. And someone claims that this piece of land over here that we thought belonged to Smith belongs to him under various deeds. All right? Yes, Your Honor. Now, the attorney says, in my opinion, I want this tried before a judge because I think I'll get a fairer shake. Okay? Illegal, right? Are you making the distinction, Your Honor, between the two? No, you just said anything that waives the right to a jury is illegal unless it's explicitly there. So that's case one. Case two, similar kind of argument. And the lawyers for the two parties get together and say we'd like to settle this case. Illegal, right? No power. They can't do it in Kentucky. Can't settle cases. Can't have cases tried before a judge. Is that right? No, Your Honor. Oh, that's not right. Oh, I see. In other words, you can't. Why isn't it right? Because after all, the fundamental right of trial by jury is being you're giving the attorney the power to refuse to have a jury. Well, Your Honor. So what's the difference between that and the case we have where we're not going to have a mediator, we're not going to have settlement, we're not going to have a judge trial, we're going to have an arbitrator? Your Honor, the interpretive rule that the Kentucky Supreme Court enunciated was the power to waive generally fundamental constitutional rights. The idea that the person is going to waive their jury rights in general from now on vis-à-vis. No, all he did was say that in the attorney's judgment, if he wants to go to arbitration and thinks that's best, he can do it. Now, I just don't see the difference between that and implying in the attorney's judgment if he wants to settle a case rather than going to a jury, he can do it. Or if in the attorney's judgment, he would like a case tried before a judge instead of a jury, he can do it. And you're going to tell me that that's ridiculous to think that a general power of attorney would give the attorney the right to say no jury, judge trial. No jury, mediator. Oh, but it makes perfect sense to say no jury, arbitrator. Now, if you're not going to tell me that those are treated exactly alike, I will tell you, in my opinion right now, you have discriminated against arbitration. Unless you can find some difference. It seems to me that the analog to what you're proposing would be an instance where the attorney engaged with another party never to have a jury trial with that party, pre-dispute just for a – from now on, or that they're always going to go to mediation and never go to the jury. Breyer. No, that isn't this. You say that attorney – I'll be repeating myself – I'm testing out whether it's really true. Of course, I'm highly suspicious, as you can tell from my tone of voice. What I really think has happened is that Kentucky just doesn't like the Federal law. That's what I suspect. So they're not going to follow it. Now, that, of course, you're going to say, no, they would never do that. So I'm trying to test this out. And that's why I asked my question, because it seems to me that arbitration as a means of settlement of a case, of a dispute, mediation as a means of settling a dispute, a judge as a means of settling a dispute, are equally and no different in the respect that none of those three involves a trial by jury. So I just want to know, and you have already said, no, no, they're all different. Well, that to me proves that they're treating arbitration specially. So I put my whole argument there because I want you to have an opportunity to reply. Thank you, Your Honor. I think the distinction that would be made there is that we're talking about an agreement that's pre-dispute and waives this particular right vis-a-vis the nursing home resident and the nursing home, potentially in perpetuity. And I guess the analog to coming to an agreement to settle pre-dispute would be a liquidated damages clause. And I think that the Kentucky Supreme Court probably would not look very favorably on an attorney, in fact, executing a liquidated damages clause with a nursing home to settle any potential personal injuries that occurred during the nursing home resident's stay. But I actually want to get to, if I could, to a more overarching point in this case, and that is the Federal Arbitration Act does not extend this Court's powers of interpretation beyond agreements to arbitrate. Moreover, DIRECTV was the exception that proved the rule, and the rule applies here. Excuse me. This Court does not ordinarily instruct States in how to interpret the instruments and documents that are governed by State law. And it should not be. Roberts. I'm sorry. Maybe I missed your point. The FAA does not extend beyond what? Agreements to arbitrate. Beyond agreements to arbitrate. Interpreting them or anything with respect to them? For example, you're not arguing that if Kentucky had a law saying you can't have agreements to arbitrate, that would certainly be covered by the FAA? Yes, Your Honor. That, we believe, would be covered by the FAA. So, and if that was a decision of a court that said under our common law you can't have agreements to arbitrate, that would also? Clearly not. That's what the Federal Arbitration Act is directly directed at. Well, then since we're talking about laws that have an impact on agreements to arbitrate, I guess I don't understand the effect of your principle. Well, we're looking at the black letter of Section 2, which provides that agreements to arbitrate shall be valid, irrevocable, and enforceable, save upon such grounds as exist for the revocation of any contract. Right. That pertains specifically to arbitration agreements. And so what do we have here? We have an absence of authority of the signator to this arbitration agreement. That certainly should qualify as a ground for the revocation of any contract, absence of authority. So that is as far as the Federal Arbitration Act extends. It extends to the enforcement of formed existing arbitration agreements. It doesn't bootstrap them into place by the – Section 2 creates substantive contract rights, certainly, the presumption of arbitrability in certain instances, the preemption of State law in certain instances. What it does not create are other kinds of rights, such as the right, the entitlement to the creation of agency in someone else's agency instrument. Have I answered? So in your reasoning, I take it that Kentucky could adopt a law that says agents lack authority to enter into arbitration agreements on behalf of the principal. Well, yes. Technically, Your Honor, that's correct. However, this Court would not have to go that far in this particular case because, again, what we're talking about is interpreting a power of attorney. And if you take a look at – let's use a comparison. The spectrum of Volt on one end and DirecTV on the other end. We have instances where this Court in Volt said that ordinarily issues of State contract law interpretation are for the States. And it accepted the lower California court's interpretation of that particular California contract, even though it meant that there was not going to be an arbitration. On the other hand, in DirecTV, the opposite occurred. Now, what's really the difference there? The difference there is where the decisionmaker has effectively abandoned its interpretive role. In DirecTV, one could certainly say that the California appellate court in that case had abandoned its interpretive role and rather imposed its own policy interests and predilections on that contract. To use another example, now, this is slightly different because it would fall under the 10b-4 deference standards, but the difference between Stolt-Nielsen on the one hand and Oxford Health on the other. You have an instance where an arbitrator simply imposed a policy decision on its quote, unquote, interpretation of the contract, and in which case the arbitrator had gone outside of his expressed powers under that contract. And Oxford Health, where even though there was some suspicion that the arbitrator had gotten his or her interpretation of the agreement wrong, nonetheless, that arbitrator was attempting to interpret that arbitration contract, and this Court respected that. Now, again, I understand that that was under the 10b-4 analysis. But if you look in this case, Clark refers to all contracts. And I think my friend, Mr. Pincus, is probably relying on the literal interpretation where all contracts means all contracts. But we must recall that in Volt v. Leland Stanford, what we had was also a potential literal interpretation, the law of the place. The law of the place in that instance, the place being California, well, what is the literal law of that place? The law of that place is the law of the State of California and Federal law. But the California court had determined that the local understanding and the local usage of that phrase, law of the place, actually just referred to California State law. Roberts. Could I talk about, focus a little bit on Wellner? What is your response to Mr. Pincus' argument that personal property does include arbitration because chose as an action our personal property? Well, the my response to that, Your Honor, Mr. Chief Justice, is that the Kentucky Supreme Court certainly engaged in trying to understand the intentions of the words that the principles meant. And it simply said that a principle, no principle who grants the power to their son, their daughter, their spouse, their attorney-in-fact, to buy and sell property or engage in contracts involving property would ever think that that would allow that attorney-in-fact to engage in one of these arbitration agreements. In an earlier case regarding powers of attorney in Kentucky, and that was, I believe it's U.S. Guarantee and Trust, it's an older case from 1912, there's language to the effect of giving the power for an agent to buy or sell property does not intrinsically give that person the power to mortgage property, although one could say that that should naturally flow from the overarching language. So that's the sort of backdrop and context in which the Kentucky Supreme Court is operating. If I could turn for a second to DIRECTV, which is obviously relied upon to a large extent by Kindred. In that particular case, I think that this Court reiterated its basic assumption  means is a question for State law and the State courts. And only in exceptional circumstances will this Court engage in a preemption and, in essence, an independent review and reinterpretation of that State instrument. And in DIRECTV, the two seminal points that seem to stand out are that that California Public Court singled out arbitration, singled out the Federal Arbitration Act for not incorporating Federal Arbitration Act preemption into the way they read their California contract, the DIRECTV contract. And it did so without attempting to tie that effectively to what the parties might intend in the DIRECTV contract. Here we do not have that. We have the Kentucky Supreme Court announcing an interpretive rule that, and it may be difficult for them to work it out over time, but, again, that's the way the common law develops, that if you have a general waiver of a fundamental constitutional right by a power of attorney, that has to be spelled out in the document. Breyer. We give the power of attorney to manage my patent. General. A lot of litigation. The other side comes in and says, okay, we'll settle. I'd like you to sign this paper, and it says what you will say and what you won't say about my patent. Absolutely normal. What you will say about your patent, what you won't say about it in certain areas. You can't do that in Kentucky, huh? Free speech. Free speech. Your Honor, Mr. Justice Breyer, I think that's correct. You can't give a power, a general power attorney that will allow a person to settle a patent case on perfectly ordinary terms. Well, it doesn't make any difference. Is there any case that suggests that, except this case, which happens to deal with arbitration? Well, it does happen. You see, I don't know how to do it. The part I don't know how to deal with your argument is you say every time I think of examples that would be very weird, which is what I'm trying to do, then you say, oh, well, yeah, that's right. You can't do that anymore in Kentucky. And every time you say that, the law of Kentucky in terms of attorneys, powers of attorney, is getting more and more peculiar. That's why I suspect something is going to happen there. So what should I do? What do you think? Well, Your Honor, I think that the interpretive rule is rather explicit. Now we say that you cannot enter into a power of attorney given the power to enter into normal patent settlements. But what about business settlements? What about business settlements where, you know, there is a perfectly normal thing where a person agrees not to compete? And in agreeing not to compete, you are agreeing not to go to certain places, with your business anyway. A lot of constitutional rights that might infringe. It might, if you didn't waive it. I don't know. Well, Justice Breyer, I mean, again, that's a question of what constitutes the fundamental constitutional right. Now — What you say about the competing product. Right. That would, in fact, be an infringement on the principle of free speech. Indeed, in instances where there are settlements in personal injury actions, often there are nondisparagement. And, by the way, he makes a product. You know, the person is given the power of attorney. And as part of a disagreement, the attorney, a disagreement with OSHA, he agrees that OSHA can come in and inspect his plant at various hours of the day or night. That kind of power of attorney would be illegal also in Kentucky. I mean, is there any State that makes that kind of power of attorney illegal or requires it to be explicit somehow that you could settle an ordinary OSHA case, you could settle an ordinary competition case, you could settle an ordinary, you know, patent case on fairly ordinary terms, and it says when you give a power of attorney to do that, you have to be explicit? Is there any State other than Kentucky in this opinion that has ever held such a thing? Maybe there is. Well, Your Honor, if I could use a comparative example from the UCC. We know that in ongoing transactions between commercial parties under the UCC, whether a contract clause is incorporated into the contract, if and when it is incorporated, may turn on whether or not that clause is considered material. Now, whether or not it's considered material is a question of State law. And as I understand, that has never been challenged, that in some instances that will in fact cause arbitration clauses not to be incorporated into contracts and not be enforceable because they're considered material and they haven't been negotiated properly. But what constitutes a fundamental constitutional right is, of course, an open question. But it does seem that certain things such as speech, marriage, religious rights, those sorts of things cannot be dealt with on a permanent basis vis-a-vis another party by an agent without the principal explicitly authorizing them to do so. Furthermore, what the principal has explicitly authorized the agent to do so is an Just as with a State statute, what a State statute means is a question for the State's supreme court. What the principals meant, what's encompassed within these powers of attorney, ultimately someone has to determine what that is. And I posit that that should be the State's supreme court. What about the principle that making an arbitration agreement harder to form than other agreements violates the Federal Arbitration Act? As Mr. Pincus mentioned, the main rule is equal footing. Arbitration agreements ought to be on the same footing as all other contracts. If you make the arbitration agreement harder to form, because you have to have this explicit reference, then other contracts does not discriminate against arbitration agreements. Perhaps it does, Your Honor, but again, our position is that the Federal Arbitration Act does not extend beyond agreements to arbitrate, such that in the instance of the UCC example that I just used, where a State decision as to whether or not arbitration clauses are considered material might make that, might make it harder to form the arbitration agreement as part of the larger commercial contract. We believe that the Federal arbitration does not speak to that. However, there are, on the other hand, instances where if a State specifically singles out arbitration to make it more difficult to form, we believe that the FAA would have something to say along those lines. And the example I would like to use in that instance is the facts of Casarato, if they were slightly different. If the Montana statute hadn't used the language in its subsection that unless the arbitration clause is in, you know, on the first page in bold letters, then that particular clause is unenforceable. If that statute had simply said we do not recognize the formation of an agreement to arbitrate unless these hoops are jumped through, that, we believe, would be addressed by the Federal Arbitration Act, because it's not really a formation issue. It's really an enforceability issue. Relieving the parties to the contract in Casarato of the responsibility for what they voluntarily signed in which there was a clear meaning. Ginsburg. Would you say you're distinguishing formation from enforcement, but we have two separate agreements that have both been formed. The power of attorney has been concluded. The agent has signed the arbitration agreement. So it's not a question of the formation of those agreements. It's what they mean. What is the proper interpretation of the power of attorney? Yes, Justice Ginsburg. That's correct inasmuch as the question here revolves around what the power of attorney means. If the power of attorney encompasses the authority for the agent to sign this agreement, then as the Kentucky Supreme Court said, the agreement will be enforced. If it doesn't, then there's no agreement. And I'm saying that the Federal Arbitration Act does not bear upon answering that question, that that is a function of State law and of the State court's interpretation of a power of attorney instrument. So, in summation, our general proposition is that the Federal Arbitration Act, again, does not extend this Court's interpretive powers beyond agreements to arbitrate. It does not extend them to powers of attorney. However, this Court need not even reach out to that particular principle because we are talking about interpreting a power of attorney, which in the ordinary course of a State instrument is up to the State Supreme Court to make that interpretation. And this Court will only step in and substitute its interpretation for that of the State Supreme Court in the exceptional circumstances. And the only exceptional circumstances that this Court has identified in Direct TV do not apply here. The Kentucky Supreme Court did not single out arbitration for a distinctive treatment and the Kentucky Supreme Court went out of its way to tie its interpretation of the meaning and authority of the power of attorney to the intention of the principle. Are there no further questions? Thank you, Counsel. Mr. Pincus, you have 10 minutes. Thank you, Mr. Chief Justice. Just a couple of quick points. With respect to the question about whether the FAA is limited to arbitration agreements, I think it's important to note that the text of the FAA says that arbitration agreements shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract. So it's true the focus of the FAA is on whether the arbitration agreement is enforceable or not, but there's nothing in the FAA that prohibits its application to an antecedent agreement if that antecedent agreement prohibits the enforcement of the arbitration agreement on a ground that's specific to arbitration. And I think that's not only true of the text of the statutes. It's true because the implications of that rule would be quite dramatic. For example, a State could just enact a statute that says a power of attorney can never be interpreted to confer the ability to enter into an arbitration agreement either at all, which my friend, I think, acknowledged would be problematic under the FAA, or could impose all kinds of special requirements. It has to be notarized. There have to be warnings about the dangers of arbitration, and surely that would be prohibited. Roberts. A State could also enact a statute that says powers of attorney can't waive fundamental rights. Would that violate the FAA, in your view? I think it would present a more difficult question than this case, and let me explain why, and then let me answer your question, Mr. Chief Justice. I think, as some of Justice Breyer's questions indicated, the rule here doesn't, in fact, embody that principle because it is both — it is underinclusive in two respects. It doesn't even affect all jury waivers because, as the dissent says— Yes, but I mean, legislators, legislatures often pass statutes that are underinclusive or overinclusive. So I don't think that distinguishes the case. Well, I think the question would be just how inclusive is it. If it's interpreted, if it is the same kind of— It says it embodies the rule that the Supreme — Kentucky Supreme Court adopted, which is that you can't raise — you can't waive fundamental rights. And like a lot of statutes, it's going to require some interpretation. That's all it says. It says you can't — you know, they're worried about the scope of powers of attorney, and they say powers of attorney in Kentucky cannot waive fundamental rights under the Constitution. And I think our answer to that question would be, although the Court doesn't have to reach it here, that lumping arbitration agreements into that category of fundamental rights is a judgment that the FAA precludes the State from making because the judgment— But that suggests that arbitration is a preferred right, and I thought that the idea of the FAA was to say it can't be whatever, dispreferred, unpreferred, you know, but not to put it on its own separate plan, like you can't deal with this in the same way that you could deal with any other fundamental right. Well, that's why I say it would be a harder question, Your Honor. But I think the critical thing is here, it's quite clear from the State court's own opinion that that isn't the rule of decision here because the State court, as the dissent points out, the express authorization requirement doesn't apply to jury waivers in a host of different circumstances, as Justice Breyer's opinions pointed out, and it also doesn't apply to lots of other kinds of fundamental rights. Well, how do we really know? Are you saying that a court can never announce a generally applicable rule first in an arbitration case?  Can it never? I would never want to say never, but I do think that this aspect of the case presents a more compelling argument for application of the FAA than in Berger. In Berger, the threshold question for the court was, does the California State court's interpretation of the phrase law of your State actually discriminate against single-out arbitration? There's no doubt that this rule is singling out arbitration. That's what the court expressly says. The question is, how broad is it singling out? It doesn't single out arbitration. That happens to be the issue before it. I mean, basically, it seems to me what it's coming down to is you just don't believe the Kentucky Supreme Court when it says this is the general principle, and you're saying, well, I really think you're hostile to arbitration because I haven't heard that principle before and this is the first one. But, you know, if the Kentucky legislature passes a law that does the same thing, I mean, are you going to be suspicious of them, too, just because arbitration might be the first time it comes up? I think it depends on the circumstances and it depends on how broadly it's applied. But I think ---- Kagan. Suppose we send this back and we say, we don't really believe you. We think you're being hostile to arbitration. And they say, we'll prove it. And in five cases involving other fundamental rights, they do what Justice Breyer suggests that they don't really have any intention of doing. But they really do it. They say, no, we're really serious about this. We think powers of attorney are special things and we have to impose special protections. And then it comes up here, you know, the sixth time, they say, and arbitration, too. What do we do then? Well, I guess a couple of things. First of all, I do think the Court has to make a judgment, as it did in Berger, based on what's before it at the time. And what's before the Court at this time is a rule created in the context of arbitration premised on ---- Kagan. Well, I know, but I guess what I want to hear you talk about, usually we don't presume that State courts are acting in ways that are not in accordance with law. Actually, we usually give them the benefit of a kind of good faith presumption. So if you're saying, well, no, they have to prove it first in five other cases before we'll believe them that they really do mean all constitutional rights, that seems, you know, an unusual rule to apply to State supreme courts who we usually think are acting in good faith and in accordance with law. Well, I don't know that they have to prove it. I think this Court has to look at the objective indicia, as it did in Berger, as it has done in other cases, to see what is really going on in the case. And I think even the majority below did not, although it said all fundamental rights, the five instances that it identified were not general fundamental rights. Free speech, for example, was not one. They are the most onerous thing. Roberts So you have to look at what's going on in the case. So in my case, where you just have a statute, there's nothing else to look at. So I still don't get why that would be invalid. I think the question in that case would not be whether it's going to be applied to the category of fundamental rights. The question in that case would be does the FAA permit a State to make a judgment that contracts with respect to arbitration should be lumped in with those other rights. Roberts There's no thought about arbitration. The word arbitration doesn't come up. Pincus No, I understand. But there still is a question, I think. What the FAA, at bottom, what the FAA said to — was reacting to was State courts saying arbitration is especially onerous and troublesome and we're going to require special processes if we enforce them at all. Roberts I understand that. But I'm talking about a legislative proposition. And it doesn't say anything about arbitration. It just says powers of attorney. You can't waive fundamental rights unless it's expressly stated. Pincus I think it would be a much harder case. I still think there would be a question. Roberts Well, I know, but the reason it's a problem is that it is, in terms of the lawmaking authority, Kentucky could say in the Supreme Court, you know, we make these rules through the courts as we did in this case. And I just — I guess I just don't see — I don't think you've — well, you haven't come up with a distinction that persuades me. And that's important because I think, as Justice Kagan said, we have to assume the Kentucky Supreme Court is acting in good faith. Breyer So isn't it that your answer is there's nothing wrong with that statute? And in fact, what the statute does, whether it covers arbitration or not, if a court holds that it does cover arbitration, you have to look to see whether the other things in there are like arbitration sufficiently or there are other things that aren't covered that are like arbitration sufficiently so that you could, at the end, draw a conclusion that this is or is not discriminatory. Roberts There's nothing else in there. The first time the statute is applied, it happens to be to an arbitration case. It happens to be to this case. But you can't say, oh, look at the background of it. It's all about hostility to arbitration.  Pincus Well, I guess two answers. Just to return to this case for a minute, I don't think that's the rule that's being applied. I think it's clear, because the instances of fundamental rights that were identified were ones that are. Roberts Mr. Pincus, you understand that when your first answer is, let's go to this case, that's not the most compelling response. Pincus I understand, Your Honor. But I – and to answer the question more broadly, I do think there's a question that the Court would have to answer in that circumstance, whether, as Justice Breyer put it more eloquently than I did, that the – that arbitration is being included in that category not because of some special characteristic of arbitration, but because arbitration agreements have the same characteristics as all of those other things, and I would – Roberts All right. Well, how would you do that? That's the position that you and maybe Justice Breyer are taking. How would you – how would you go about that? How would you say, we've got to decide why arbitration is being included in this? Pincus Well, and I would say, as an advocate at least, that the problem with that judgment is that what Congress said in the FAA is, in fact, you can't say that arbitration agreements should be treated like some special category of contracts just because of a characteristic of arbitration. There has to be another reason, and what the State is doing there is saying arbitration is especially significant because of a – of a characteristic. It waives the jury right that is intrinsic to arbitration, and I think that conflicts with the Federal policy. So, yes, the State could say that with all fundamental rights. My argument would be it can't do that with respect to arbitration, and I might lose. Breyer So it may – as I understand the question better, one, of course the legislature could enact such a statute. Two, if we have our first case arbitration and they say arbitration is included among it, then what we're job is, is to read the opinion. Now, sometimes courts don't write enough in the opinion for us to make the decision as to whether or not it is being discriminated against, in which case we send it back and ask them to write more. So is that what we should do? Pincus Yes or no? Your time has expired. Roberts  I think you have enough here. Pincus No, you can answer. Roberts I think the answer is no, because I think there's enough in this opinion. I think for the reasons indicated in Justice Breyer's question, the category here doesn't apply to all jury waivers, so the argument that it applies even to the waiver of a jury right is not true. And it doesn't apply to all fundamental rights. The examples that were given are of the most onerous kinds of contracts you can imagine. Sotomayor Mr. Pincus, you're cheating. Pincus Sorry. Roberts Thank you, counsel. The case is submitted.